**UNITED STATES of America**

v.

**Melvin D. WALLACE**

**and**

**Arthur M. Levin, Appellant.**

**No. 91–5210.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 30, 1992.

Decided June 2, 1992.

---

Arthur M. Levin, pro se.

John R. Fisher, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., was on the brief, for U.S. Elizabeth Trosman, Asst. U.S. Atty., also entered an appearance for U.S.

Before: WALD, EDWARDS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case requires us to decide whether a criminal defense attorney who, through inattention, failed to subpoena friendly witnesses acted either unreasonably and vexa-tiously to multiply the proceedings or in bad faith. The District Court so found and sanctioned the attorney under 28 U.S.C. § 1927 (1988) and the trial court's inherent powers. On the record before us, we find negligent, even sloppy, performance by the defense counsel, but nothing to suggest vexatiousness or bad faith. We therefore reverse the sanctions imposed.

## I. BACKGROUND

On Wednesday, March 20, 1991, six days before the trial in *United States v. Wallace*, Crim. No. 91–21 (D.D.C.1991), was scheduled to begin, defense attorney Arthur Levin realized that he had not subpoenaed the witnesses he expected to present. That afternoon, Levin, who was in the midst of another trial, contacted his court-appointed investigator and, the next morning, met with the investigator and instructed him to serve the subpoenas.

On Monday, March 25, 1991, one day before trial, Levin learned that the subpoenas still had not been served. Levin contacted the District Court Judge and scheduled a status conference, at which he informed the court that the defense witnesses were not under subpoena. Levin acknowledged the problem that he had created, but advised the trial court that he thought he could be ready for trial on the next day:

> For the court's information, I felt it was irresponsible of me to wait to notify the court when I discovered my witnesses were not under subpoena. I think I can still be ready by tomorrow, but I wanted to alert the court that I had a problem with tomorrow's 9:30 trial time ... [i]n terms of having my witnesses under subpoena and knowing, because they were under subpoena, they would be here.

Transcript of Status Call, March 25, 1991, at 3 ("Tr. I"). Levin also offered to "pay whatever price is appropriate under the circumstances." *Id.* at 5. The court ordered Levin to attempt to contact the witnesses that evening and said it would "wait until tomorrow morning" to consider any sanction. *Id.* Levin agreed with this

course of action and stated that he would contact the witnesses himself "immediately upon leaving court." *Id.*

The trial judge also advised Levin that a guaranteed jury [1] had been secured for the morning. *Id.* The status conference then concluded with all parties agreeing to be present at 9:30 the next morning, although there was some disagreement over whether the original time had been 10:00.

> THE COURT: All right. The court will go forward tomorrow morning, then.
>
> MR. LEVIN: We'll be here at 9:30.
>
> THE COURT: All right, get your investigator. We'll adjourn this hearing until 9:30 tomorrow morning.
>
> MR. LEVIN: Thank you, Your Honor.
>
> MR. BEASLEY [the Assistant U.S. Attorney]: Your Honor, I just want to be clear on that start time tomorrow. I see listed a note on [the] jacket that indicated that it was to start at ten, and—
>
> THE COURT: We're going to start at 9:30.
>
> MR. BEASLEY: That's fine.
>
> MR. LEVIN: That was my recollection of the time you said at the motions—I mean at the status call, Your Honor, but I'll be happy to be here at 9:30. I have nothing else scheduled.
>
> THE COURT: It's at 9:30.
>
> MR. LEVIN: That will be fine, Your Honor.
>
> MR. BEASLEY: That's fine, Your Honor.
>
> THE COURT: All right.

Tr. I at 10–11.

On March 26, the witnesses failed to show-up in time for trial at the scheduled time of 9:30 a.m. Although Levin had contacted the coordinating witness the previous evening, and had received assurances that all would be in court that morning, he could not account for their absence. He told the court:

> I am not ready to go forward this morning. I contacted the major witness last night. I did reach her. She had promised to be in the Lawyers' Lounge at 9:00 this morning.... I told her we would start at 9:30. I'm sorry.... I cannot provide this court any reasonable assurance, since none of the witnesses have been physically subpoenaed, that they will be here at 10:00, or at 9:30 this morning. The hour now, as Your Honor is aware, is about 9:35.
>
> I take, as I did yesterday, full responsibility for failing to subpoena these people timely. Two of the three witnesses were here at the last status call[2] and I just did not have the subpoenas with me, and when I realized last Wednesday night, while reviewing this file in the midst of another case, that I did not have copies of the subpoenas, which meant, of course, to me, based on my practice of 16 years, I always make a copy so that the witness has a copy and I have a copy, and both are executed by the witness when they receive the subpoena, I immediately called my investigator, who met me Thursday morning. He showed up Thursday and I gave him the names and the phone numbers and all the necessary information, and I learned yesterday that he had not been able to effect service.

Transcript of Hearing, March 26, 1991, at 2–3 ("Tr. II").

The trial court, after inquiring whether the defendant wished to have new counsel appointed and after rescheduling the case, then notified Levin that it would assess sanctions, to which Levin initially acceded:

> THE COURT: ... [W]e had a guaranteed jury this morning, did we not?
>
> THE CLERK: That's correct.
>
> THE COURT: I want to know the cost, and I'm going to assess the excess cost and expenses and attorney's fees incurred by the government against Arthur Levin under 28 U.S.C. 1927 as soon as the court is properly advised as to what they are.
>
> MR. BEASLEY: Yes, Your Honor.

---

1. Although the parties at oral argument could not describe a "guaranteed jury" with any precision, there was agreement that the practice involves calling some larger number of persons for the day's jury pool and allocating them, either on an exclusive or first-refusal basis, to the judge for whom the jury has been guaranteed.

2. The status call *before* the March 25 status call.

THE COURT: You shall file a memorandum with respect to those costs of this delay ... occasioned by defense counsel in his failure to subpoena the alleged essential witnesses for the defense ... so we couldn't proceed to trial today.

MR. LEVIN: Your Honor, for the court's general information, based on past information, I believe juries, the cost of bringing in a jury panel is approximately $750. I understand the court's ruling, and as soon as Your Honor gives me a number, I'll abide by the court's order.

THE COURT: Well, I have great affection for you, Mr. Levin, personally, but, professionally, I have a duty here—

MR. LEVIN: I understand the court's position.

THE COURT: —and I can't help it.

MR. LEVIN: And I, I agree with the court. I do not contend that what the court's doing is in any way anything other than totally proper.

Tr. II at 8–9.

Following this hearing, the trial court filed a memorandum on April 1, 1991, assessing sanctions against Levin in the amount of $2,077.00. The fee for the guaranteed jury, including juror fees and clerk costs, totalled $1,720.00 and the Assistant U.S. Attorney's time and witness expenses totalled $357.00. The court specifically found that Levin's failure to subpoena the witnesses constituted reckless, vexatious and bad-faith behavior, justifying the sanction of attorneys' fees and jury costs. *United States v. Wallace*, Crim. No. 91–21, Memorandum Opinion 5 (D.D.C. Apr. 1, 1991) ("Mem. Op.").

After the rescheduled trial, at which the defendant was acquitted, Levin moved that the trial court reconsider its sanction. As before, he noted that he had indeed contacted the coordinating witness the evening before the trial and that she had promised to arrive. "In fact, they had transportation difficulties and, instead of arriving at nine, which I had asked, and at 9:30, which the court ordered the start of the proceedings,

they arrived at 10:00...." Transcript of Post–Verdict Proceedings, April 3, 1991, at 3 ("Tr. III"). While he acknowledged that failure to subpoena the witnesses had been "a mistake," Levin denied that he acted vexatiously or in bad-faith. *Id.* The court noted that, at the time the sanction was imposed, Levin had not contested the sanction. *Id.* at 6. In response, Levin stated that he had not considered the applicable law and, upon doing so, had discovered that vexatiousness was required in order to justify sanctions. Levin claimed that he had not acted vexatiously. He offered to put on the investigator and the coordinating witness to testify to his efforts. *Id.* at 5, 9, 11, 13. The trial court refused to hear the testimony and stood by its original decision. Levin subsequently submitted a written motion for reconsideration, which the trial court denied. He now appeals.

## II. ANALYSIS

The District Court assessed Levin the cost of the United States Attorney's expenses under 28 U.S.C. § 1927 (1988) ("section 1927") and the cost of the guaranteed jury pursuant to the court's inherent power. Although the standard under section 1927 is somewhat unsettled, attorney behavior must be *at least* "reckless" to be sanctionable under that section and must constitute "bad faith" to justify invoking the court's inherent powers. We find nothing on the record before us that reaches the level of either recklessness or bad faith.

■ We review the trial court's finding of bad faith under the clearly erroneous standard, *see American Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 222 (D.C.Cir.1991), and apply an abuse-of-discretion standard to the trial court's decision to impose sanctions, *see Chambers v. NASCO, Inc.*, — U.S. ——, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991); *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir.1990); *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C.Cir.1990).[3]

---

**3.** Although our review is narrow, the applicable standards are not without content; each provides a well-understood benchmark against which to weigh the trial judge's decision. *See Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("A

Section 1927 recognizes by statute a court's power to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings.

> Any attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (1988). The District Court relied upon this section to assess Levin the U.S. Attorney's expenses. Because section 1920 of the same subchapter defines "costs" and does not include the cost of a jury, the trial court did not rely upon that section for the jury-cost sanction. *See* Mem. Op. at 7–8; *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 759–61, 100 S.Ct. 2455, 2460–61, 65 L.Ed.2d 488 (1980) (section 1927 "costs" defined by section 1920); 28 U.S.C. § 1920 (1988) (list of "costs" items does not include jury); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 560 (3d Cir.1985) (en banc) (section 1927 does not reach to cost of impaneling a jury); *United States v. Austin,* 749 F.2d 1407, 1409 (9th Cir.1984) (same).

As to the jury-cost sanction, the District Court purported to rely on its inherent powers. "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers,* 111 S.Ct. at 2132 (quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). The *Chambers* Court explicitly recognized courts' inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.,* 111 S.Ct. at 2133 (internal quotations omitted); *see also Roadway*

*Express,* 447 U.S. at 767, 100 S.Ct. at 2464 (holding attorney's fees not recoverable under pre–1980 version of section 1927, but remanding because they might be justified under the court's inherent power). The *Chambers* Court also held that the presence of statutes specifically authorizing certain sanctions in certain cases does not eliminate a court's power to impose sanctions under its inherent authority. *See* 111 S.Ct. at 2134 ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above."); *see also Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978) ("An equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."); *United States v. Williams,* 894 F.2d 215, 217 (7th Cir.1990) (court's inherent authority authorizes sanction on attorney in criminal case); *In re Cordova Gonzalez,* 726 F.2d 16, 20 (1st Cir.) (same), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984); *In re Sutter,* 543 F.2d 1030, 1037 (2d Cir.1976) (same).

The law of this circuit, reflecting a split in the circuits generally, is unsettled over whether a court must find an attorney's actions to be in bad faith before imposing sanctions under section 1927. *See generally Cruz,* 896 F.2d at 631 (noting split and collecting cases); Debra T. Landis, Annotation, *What Conduct Constitutes Multiplying Proceedings Unreasonably and Vexatiously so as to Warrant Imposition of Liability on Counsel Under 28 U.S.C.[] § 1927 for Excess Costs, Expenses, and Attorney Fees,* 81 A.L.R.Fed. 36 (1987) (same). *Compare Hilton Hotels Corp. v. Banov,* 899 F.2d 40, 45 n. 9 (D.C.Cir.1990) ("[u]nlike Rule 11 ... section 1927 applies only when the attorney acts in *subjective*

---

finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'") (quoting *United States v. United States Gypsum,* 333 U.S. 364, 395, 68

S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *United States v. Dockery,* 955 F.2d 50, 54 (D.C.Cir.1992) ("[a]buse of discretion review means that the court has a range of choice, and that its decision will not be disturbed *as long as it stays within that range*") (internal quotation omitted).

*bad faith"*); *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) (section 1927 requires finding of bad faith); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 208 (3d Cir.1985) *and United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) *with Reliance Ins. Co. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C.Cir.1986) ("While the language of § 1927 suggests deliberate misbehavior, subjective bad faith is not necessary; attorneys have been held accountable for decisions that reflect a reckless indifference to the merits of a claim."); *Hogue v. Royse City*, 939 F.2d 1249, 1256 (5th Cir.1991) (bad faith finding not required); *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1309, 113 L.Ed.2d 243 (1991); *Cruz*, 896 F.2d at 632; *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir.1987); *In re Ruben*, 825 F.2d 977, 983–84 (6th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988) *and Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984). "Nevertheless, all of the courts, including those applying a lesser standard, at minimum agree that unintended, inadvertent, and negligent acts will not support an imposition of sanctions under section 1927." *Cruz*, 896 F.2d at 631 (citing *Ruben*, 825 F.2d at 984). Counsel for the United States agreed at oral argument that negligent actions would not justify the sanctions.

■ By contrast with section 1927, it is settled that a finding of bad faith is required for sanctions under the court's inherent powers. *See Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2465 ("The trial court did not make a specific finding as to whether counsel's conduct in this case constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers."); *Chambers*, 111 S.Ct. at 2134 ("the narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad faith conduct or willful disobedience of a court's orders"); *id.* at 2136 ("[a] court

must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that *the requisite bad faith* exists and in assessing fees") (emphasis added); *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 180–82 (D.C.Cir.1980).

■ We need not resolve the question of what standard to apply under section 1927. On the record before us, we are convinced that Levin's behavior, while certainly negligent and careless, does not reach even the lowest of the possible thresholds—be it recklessness, deliberate indifference or some other measure of vexatiousness.

As noted above, the factual question is extremely focused: whether failure to subpoena friendly witnesses before trial, nondiscovery of that fact until six days before trial, and reliance on an investigator until one day before trial constitutes sanctionable behavior. Neither the trial judge nor the Government has identified any other behavior by Mr. Levin that could support the sanction. The trial judge summarized Levin's conduct thusly:

> This defense attorney has practiced criminal law for 16 years, is aware of the common procedures and courtesies, and knows the hardship that his actions have inflicted. On this basis, it cannot be said that the defense counsel's failure to issue subpoenas when he had ample opportunities to do so was anything other than reckless, unreasonable, vexatious, and clearly within the confines of th[e] statute.

Mem. Op. at 5.

With due respect to the trial judge, we do not think the facts of this case can support a section 1927 sanction or, by extension, a sanction under the court's inherent powers. Of course, recklessness is a less stringent standard than bad faith: the latter standard would require finding an intent unreasonably to delay the proceedings, while the former does not require showing unreasonable delay as the *purpose* of the attorney's actions. Nevertheless, "recklessness" is a high threshold, *see In re TCI Ltd.*, 769 F.2d

441, 445 (7th Cir.1985) ("[o]ur court long has treated reckless and intentional conduct as similar"), and in general requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores. The *Restatement (Second) of Torts* provides the classic distinction between recklessness and negligence.

> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.

RESTATEMENT (SECOND) OF TORTS § 500 cmt. g (1964). Here there is no contention or finding that Levin intended to delay the trial or to not subpoena the witnesses for the trial.[4] "[T]he power to assess costs on the attorney involved 'is a power which the courts should exercise *only* in instances of serious and studied disregard for the orderly process of justice.'" *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983) (quoting *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir.1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969)); *see also Cruz*, 896 F.2d at 632 (same).

In a case almost on all fours with the present one, *United States v. Ross*, 535 F.2d 346 (6th Cir.1976), the trial court sanctioned the criminal defense attorney for failure to appear for the scheduled trial date and for failing to notify the court of his expected absence. The defense attorney's prior engagement, a state murder trial, ran longer than expected. The Sixth Circuit reversed the sanction.

> [I]t seems appropriate not to impose this sanction for an unintended inconvenience to the court no matter how annoying it might be. Personal responsibility should, in this instance, flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court.

*Id.* at 349. *Cf. United States v. Austin*, 749 F.2d 1407, 1409 (9th Cir.1984) (sanction for attorney's inability to contact client with new trial date reversed). We agree with the judgment of the Sixth Circuit in *Ross* and think it controlling in this case.

Where courts have employed section 1927, the attorney's behavior has been repeated or singularly egregious. For example, in *Fritz v. Honda Motor Co.*, 818 F.2d 924 (D.C.Cir.1987), this court upheld section 1927 sanctions where the attorney "repeatedly took actions which required [the defendant] to expend unnecessary time and money, even though he had no intention of pursuing this litigation." *Id.* at 925; *see also Julien v. Zeringue*, 864 F.2d 1572, 1575–76 (Fed.Cir.1989) (sanctioning attorney who "continually missed deadlines, requested at least 10 extensions of time to file his briefs, and submitted a joint appendix 11 months after he was given extensive and explicit instructions"); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir.1988) (en banc) ("section 1927 imposes a continuing obligation on attorneys by prohibiting the persistent prosecution of a meritless claim"); *Toombs v. Leone*, 777 F.2d 465, 471–72 (9th Cir.1985) (counsel sanctioned for *deliberately* failing to meet pretrial brief deadline and then filing, on

---

**4.** We recognize that an attorney who *decides* never to subpoena witnesses would at least have the *mens rea* necessary for a recklessness finding. The question would then turn on the degree of the risk that the proceedings would thereby be "multiplied" within the meaning of section 1927.

morning of trial, 148–page trial brief and 34–page exhibit list).[5]

The only instance of delaying behavior the trial court relied upon in sanctioning Levin was his inadvertent failure to subpoena his witnesses. While intentional or repeated failure to subpoena might support sanctions, we cannot find this behavior to be reckless or in bad faith. We think it unfortunate that neither Levin nor Government counsel thought to request the trial judge to hold the jurors for a short time, ensuring that the trial could have occurred when the defense witnesses arrived at 10:00. Nonetheless, this too is no more than negligent oversight.[6]

### III. CONCLUSION

For the foregoing reasons, the order of the District Court imposing sanctions on Arthur Levin is reversed.

*So ordered.*

---

**5.** By contrast with section 1927, Rule 11 of the Federal Rules of Civil Procedure "focuses on an attorney's obligation 'at the time a pleading, motion, or other paper' is signed," *National Ass'n of Gov't Employees v. National Fed'n of Fed. Employees,* 844 F.2d 216, 222 (5th Cir.1988) (quoting *Thomas,* 836 F.2d at 881).

**6.** Even if there were a basis for sanctions in this case, it is noteworthy that we do not have a reliable measure of the costs the court incurred solely because of Levin's failure to subpoena the witnesses. Section 1927 "creates liability only for *excess* costs, expenses and attorneys' fees reasonably incurred because of the attorney's

unreasonable and vexatious multiplication of the proceedings." *Browning v. Kramer,* 931 F.2d 340, 344 (5th Cir.1991). We do not know, for example, whether any of the jurors called were used for other trials. Additionally, as the memorandum from the jury clerk notes, the total sanction amount included a fee for each juror, including those who were United States and District of Columbia employees and who were therefore not eligible for fees. *See* Mem. Op. attachment; 1 Administrative Office of the United States Courts, Guide to Judiciary Policies and Practices, ch. VI, pt. B, § 2.4 (Aug. 1991).