**William J. HEALEY, Plaintiff,**

v.

**Marc R. LABGOLD, Defendant.**

**No. CIV. 00–0465TFHJMF.**

United States District Court,
District of Columbia.

Oct. 17, 2002.

Kenneth Rosenau, Rosenau & Rosenau, Washington, DC, for Plaintiff.

William J. Healey, Washington, DC, pro se.

Stephen William Robinson, McGuire, Woods, Battle & Boothe, McLean, VA, for Defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

### Introduction

In an earlier opinion I described how the relationship between two lawyers, William J. Healey and Marc Labgold, had degenerated from a warm friendship to bitter acrimony. The heart of the darkness is Healey's belief that Labgold, breaching Healey's confidence, disclosed to the members of a law firm with which both were then associated, that Healey was a homosexual. Healey's departure from that firm bred lawsuits, one in the United States District Court for the Eastern District of Virginia and one here. Initially, Healey proceeded *pro se*, but the lawsuit in this court ultimately settled promptly upon the arrival of Healey's present counsel. However, Labgold complains that Healey should have never filed the lawsuit in this court in the first place and demands that Healey reimburse him for the attorney's fees he has incurred. Labgold, for example, bitterly complains that Healey included as the first five counts of his complaint in this court the very same five counts that the Eastern District said he could not press because these counts belonged to Healey's bankrupt estate and could be pressed only by the trustee in bankruptcy.

The Chief Judge has referred this matter to me for a hearing and a report and recommendation on whether plaintiff's action against Labgold, now settled, should be dismissed with or without prejudice and whether Labgold is entitled to sanctions for Healey's bringing of this lawsuit in the first place.

In my initial decision I surveyed the sources of the court's authority to impose the sanctions Labgold seeks and concluded that a hearing was necessary under all of them to ascertain Healey's intent when he filed the lawsuit and prosecuted it as he did. I, therefore, held a hearing at which Healey testified.

## This Decision

There are two [1] sources of authority to sanction Healey: the court's inherent authority, and its power, under 28 U.S.C.A. § 1927 (1994), to punish with sanctions an attorney who unreasonably and vexatiously multiplies the proceedings in a case. As I will explain, I have concluded that Healey violated this statute. There is, therefore, no reason to also consider whether the same conduct should be punished under the court's inherent authority.

I begin with specific findings of fact that are based on the testimony I heard and the exhibits either admitted at the hearing or attached to the various pleadings. I then set forth my conclusions of law and conclude with an explanation of why I have reached that conclusion.

## FINDINGS OF FACT

1. In May of 1995, William J. Healey was hired by Oblon, Spivak, McClelland, Maier & Newstandt, P.C. ("Oblon Spivak") as an associate. He was fired on May 5, 1998.

2. On September 25, 1998, Healey filed a petition for bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia.

3. On January 7, 1999, Healey received a discharge from the bankruptcy court.

4. On January 14, 1999, the bankruptcy trustee filed a report of no distribution, and an order was entered closing the case.

5. On January 26, 1999, Healey filed a complaint in the United States District Court for the Eastern District of Virginia against Oblon Spivak, Norman F. Oblon, Marvin J. Spivak, C. Irvin McClelland, Gregory J. Maier, Arthur I. Neustadt and Marc R. Labgold ("Labgold").

6. The complaint contained 7 counts:

Count 1: Wrongful Discharge

Count 2: Breach of Contract

Count 3: Breach of Fiduciary Duty

Count 4: Tortious Interference with a Contract

Count 5: Interference with a Business Relationship

Count 6: Defamation

Count 7: Intentional Infliction of Emotional Distress

7. On August 16, 1999, the law firm and Labgold moved to dismiss the complaint on the grounds that Healey's bankruptcy filing should have included in its schedules the claims Healey was pressing against them. Before that motion was ruled upon, Healey filed an amended complaint that, *inter alia*, withdrew the claim for intentional infliction of emotional distress, but added a claim for violation of a Virginia Code provision that, according to Healey, barred any conspiracy to injure an individual professionally by firing him and then advising others that he had been fired for cause.

8. On August 25, 1999, Healey filed a motion in the Bankruptcy Court to

---

1. Initially, I believed that Fed.R.Civ.P. 11 was a source of authority I had to consider, but Labgold's counsel reminded me at the hearing that Labgold does not rely on that rule.

reopen his case for the purpose of listing and exempting his interest in the lawsuit he had filed. He also moved to dismiss count seven of his complaint, that charged the intentional infliction of emotional distress.

9. On September 10, 1999, the United States District Court for the Eastern District of Virginia (Lee, J.) granted the defendants' motion to dismiss on the grounds that Healey, the bankrupt, had no standing to press the lawsuit against the law firm and Labgold. The court further held that only the trustee could press that lawsuit. The court then denied Healey's motion for leave to amend and to reopen the bankruptcy case.

10. On October 12, 1999, Healey filed a notice of appeal of Judge Lee's decision.

11. On October 28, 1999, the Bankruptcy Court granted Healey's motion to reopen the bankruptcy case.

12. On November 9, 1999, Healey filed an amended Schedule B listing the lawsuit as an asset of the bankrupt estate and an amended Schedule C claiming the lawsuit was exempt under Va.Code Ann. § 34–28.1.

13. On November 16, 1999, Healey filed a motion in the Bankruptcy Court to dismiss his bankruptcy case.

14. On December 3, 1999, the Trustee filed an objection to Healey's claimed exemption of the lawsuit.

15. On January 20, 2000, the Bankruptcy Court denied Healey's motion for voluntary dismissal and sustained the trustee's objection to Healey's claimed exemption with respect to counts 1–5 of the complaint that was dismissed by Judge Lee. The Bankruptcy Court overruled the Trustee's objection to Healey's claimed exemption with respect to count 6 and what had become count 8. These counts were premised on defamation and conspiracy to injure a person's reputation by telling others he had been fired.

16. On February 14, 2000, the 4th Circuit summarily affirmed Judge Lee's ruling that Healey lacked standing to bring the action.

17. On March 7, 2000, Healey filed a memorandum with the Bankruptcy Court urging the court to reject a proposed settlement between the Trustee and Labgold regarding the lawsuit Healey had filed in the Eastern District of Virginia and to either reconsider his motion to dismiss the bankruptcy case or order the entire case closed.

18. On March 7, 2000, Healey filed a complaint in this court against Labgold, Norman F. Oblon, Marvin J. Spivak, C. Irvin McClelland, Gregory J. Maier, Arthur I. Neustadt, Martin A. Zoltick and Oblon Spivak. On June 26, 2002, Healey filed an amended complaint.

19. The amended complaint contained 8 counts:

Count 1: Wrongful Discharge

Count 2: Breach of Contract

Count 3: Breach of Fiduciary Duty

Count 4: Tortious Interference with a Contract

Count 5: Interference with a Business Relationship

Count 6: Defamation

Count 7: Intentional Infliction of Emotional Distress

Count 8: Conspiracy to Harm Reputation or Profession

The counts of this complaint are identical to the counts of the complaint that had been filed in the United States District Court for the Eastern District of Virginia, except that the amended complaint in this court contained a seventh count for Intentional Infliction of Emotion Distress while the amended complaint in the Eastern District of Virginia did not.

20. On June 29, 2000, Healey sent Jeffrey Liss, the managing partner at Piper, Marbury, Rudnick and Wolfe, where Labgold was then working, an e-mail. It indicated that Healey had faxed a copy of the complaint in this lawsuit to Liss. In the e-mail, Healey said that the lawsuit provided "some interesting reading on Marc Labgold who didn't stay too long on Long, Adlrich." Healey then indicated his desire to settle the lawsuit and stated:

If it doesn't settle, the least I can do is make others aware of how Marc treated his partner and friend [i.e., Healey]. I wonder how he treated his partners at Long, Aldrich and how he will treat his partners at Piper Marbury.

21. On July 7, 2000, the 120th day after the filing of the complaint in this Court, Healey had a friend try to effect service of process on Labgold by posting the complaint on the front door of his residence and sending a copy via first class mail.

22. On July 20, 2000, Labgold filed a motion to dismiss for failure to effect timely service of process under Fed.R.Civ.P. 12(b)(4) and/or Fed.R.Civ.P. 12(b)(5). Labgold subsequently filed a motion to quash service of process.

23. On August 14, 2000, Labgold filed a motion to treat his motion to dismiss and motion to quash as conceded because Healey failed to respond to those motions.

24. On October 31, 2000, Healey filed a motion to enlarge the time in which to oppose the pending motions that Labgold conceded.

25. On November 17, 2000, this court granted Healey's motion to enlarge the time in which to oppose the pending motions.

26. Upon the arrival of counsel for the plaintiff, settlement negotiations commenced and resulted in a settlement between plaintiff and all the defendants, except Labgold. Labgold was not, however, required to pay any funds to Healey by virtue of the settlement between Healey and the other defendants.

27. On November 30, 2000, Healey filed a motion to dismiss without prejudice as to defendant Labgold.

28. On December 12, 2000, Labgold filed an opposition to Healey's motion to dismiss without prejudice.

29. On January 9, 2001, Healey filed a motion to dismiss with prejudice as to all remaining defendants and without prejudice as to Labgold.

## CONCLUSION OF LAW

■ Plaintiff unreasonably and vexatiously multiplied the judicial proceedings in this case by filing a complaint that contained five counts that a court of competent jurisdiction had previously concluded plaintiff had no standing to bring.

## CONTROLLING LEGAL PRINCIPLES

28 U.S.C.A. § 1927 (1994) provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[2]

■ A showing that counsel's behavior has been unreasonable and vexatious requires more than a showing of negligence. *U.S. v. Wallace,* 964 F.2d 1214, 1219 (D.C.Cir.1992). Instead, it requires a showing of "deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Id.* at 1219. In *Wallace,* the court of appeals relied upon what it called the "classic" distinction between recklessness and negligence contained in the *Restatement (Second) of Torts:*

> Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent.

*Restatement (Second) of Torts* § 500 cmt. g (1964)(*quoted in Wallace,* 964 F.2d at 1220).

## ANALYSIS

This case is clearly inapposite; we are certainly not talking about "negligence." Healey cannot deny that the first five counts of the lawsuit he filed in this court were the very counts that another court had held were not his property. It would be silly for a man who made a handsome living as a trial lawyer in patent cases in federal courts and tribunals to pretend that he was merely negligent in filing a lawsuit that contained five counts that another court had previously concluded did not belong to him. To the contrary, Healey took the kind of purposeful, intentional action that rises well above negligence to at least the level of recklessness required by *Wallace.* Note that the recklessness required to establish a violation of § 1927 is less than the bad faith required to authorize a court's invocation of its inherent authority. *U.S. v. Wallace,* 964 F.2d at 1219.

It is equally clear that his action violated the statute. By its express terms, § 1927 punishes the purposeful multiplying of proceedings. Surely, the filing of a lawsuit that contains five counts that another federal court has expressly stated you have no right to press qualifies as the multiplying of proceedings. If that is not a violation of the statute, one wonders what is.

Furthermore, a paragraph of the complaint filed in this court is such a distressing mischaracterization of what occurred in the Bankruptcy Court and in the Eastern District of Virginia that it further solidifies my conclusion that Healey's filing of the complaint was vexatious and unreasonable.

Judge Lee of the Eastern District of Virginia dismissed plaintiff's complaint on the grounds that it was owned by the

---

**2.** As noted in my earlier opinion, this statute applies to an attorney who proceeds *pro se.*

bankrupt estate. Healey then reopened his case, claiming that the lawsuit Judge Lee dismissed was exempt from that estate and belonged to him. Healey, protesting a much greater motivation to pursue the matter than the trustee, then tried to dismiss the re-opened bankruptcy case in order to exempt all of the claims from the estate so he could pursue it himself. The Bankruptcy Court, however, denied Healey's motion to dismiss. While Healey appealed from Judge Lee's decision, he did not appeal from the Bankruptcy Court's decision. Thus, on January 19, 2000, the date of the Bankruptcy Court's decision, Healey had to know that, despite his protests, the trustee had the exclusive right to press the first five counts of the lawsuit and to settle them with Labgold or any other defendant. Nevertheless, in ¶ 45 of the complaint he filed in this court, he wrote:

> After dismissal of the case[i.e. the case he had brought in the Eastern District of Virginia that Judge Lee had dismissed], plaintiff later reopened his bankruptcy and spent 6 months litigating his right to refile this suit. In January 2000, plaintiff's claims relating to personal injury (including defamation and conspiracy) were held to be exempt from bankruptcy and he regained the right to sue on those claims. Earlier this month (March 2000), plaintiff learned that the trustee was going to abandon the claims against all except Labgold, leaving plaintiff free to refile his suit.

Complaint, ¶ 45.

This paragraph tells its reader that the bankruptcy court had ruled that claims relating to personal injury were exempt and that he had the right to sue on "those claims." The conclusion the reader would necessarily draw was that the claims being asserted in the lawsuit were the rights originally exempted from bankruptcy that he had regained. That conclusion, like the statements in paragraph 45, is half-true. He had regained only the right to pursue the two claims the Bankruptcy Court had held were exempted from the bankruptcy estate: the claims for defamation, and conspiracy to injure the debtor in his business or profession. Exhibit H at 3. Yet, by using the word "including" in the parenthesis, he conveyed the impression that all of his claims had been deemed exempt from bankruptcy-nearly the exact opposite of what the Bankruptcy Court held.

He also indicated that he was now free to refile the lawsuit because he had learned the trustee was going to abandon it. But, on the very same day that he filed the lawsuit, he filed his *Response and Memorandum to Trustee's Motion for Approval of Compromise and Settlement in the Bankruptcy Court*, in which he stated only that the Bankruptcy Trustee's abandoning the lawsuit was a "strong possibility." Exhibit I at 5. Thus, in the Bankruptcy Court, the trustee's abandoning the lawsuit was characterized as a possibility, but in this court it was, according to Healey, a *fait accompli*. Healey's willingness to have his reader believe what he knew could not be true-that he had the express right to press all counts of his complaint-convinces me that he filed the lawsuit in this court because he wanted to continue to make Labgold pay for "outing" him and could not bear to see him get away so cheap. Whatever the strength of that motivation, his filing a complaint in this court that contained five counts he knew he did not own and could not press was certainly both unreasonable and vexatious-a purposeful effort to avoid the consequences of the Bankruptcy Court's decision to vest ultimate control over those five counts in the Bankruptcy Trustee.

Healey answers that he was do nothing more than protecting his claims against his former partners, including Labgold, from the statute of limitations. That explanation rings hollow when one recalls, that (1) the Fourth Circuit has affirmed Judge Lee's decision, holding that Healey had no standing to prosecute his claims, (2) upon the reopening of the bankruptcy case, the Bankruptcy Court held that Healey could not press five of the counts in this complaint, and (3) Healey had neither filed a petition for a writ of certiorari in the Supreme Court as to the Fourth Circuit's decision, or an appeal of the Bankruptcy Court's determination. If Healey took no appeal from the determinations, what status quo was he trying to preserve by filing this lawsuit? If two courts held that Healey could not assert these claims, and Healey took no appeal from those determinations, what possible justification did Healey have in preserving counts he knew he count not assert?

Furthermore, if Healey truly was doing nothing more than preserving his claims from the statute of limitations, he surely picked a way to do it that would be most burdensome to his opponents, such as Labgold. This is not the first case nor the last where a lawsuit has been filed to preserve a claim from the statute of limitations pending the result of some other lawsuit. While we judges grow hoarse attempting to get the bar to treat each other more civilly, even the most hard charging litigator is supposed to do the job for his client at the least expense. Had Healey tried, he might have been able to negotiate a stalemate pending results in another forum. He could have asked opposing counsel whether they would agree that the lawsuit he filed be stayed for all purposes, including service of process, pending developments in the other forum. Opposing counsel might well have found the offer attractive since it would not cost their clients anything more than the time it would take to negotiate the agreement and draft a stipulation. While there was no guarantee that Healey's opponents would agree or that a judge would go along with it if everyone did agree, it was certainly worth a try. Although he was only supposedly preserving his claims, he neither told his opponents nor tried to get them to cooperate with what he was attempting.

Finally, there is that nasty e-mail that Healey sent to the firm that Labgold had joined. It was a mean-spirited way to use this lawsuit to blacken Labgold's name just as he was coming through the door. Healey is no fool. He knows that in what has become the high stakes world of the Washington, D.C. legal community, partnerships can be worth millions. Healey also knows that members of a high stakes firm are understandably skittish about the bubble reputation of their partners. Sending that email, knowing what it could do to Labgold, speaks volumes about Healey's true intentions and makes his claim of filing the lawsuit to preserve his original claims from the statute of limitations ring awfully hollow.

I, therefore, conclude that the filing of the lawsuit in this court constituted the vexatious and unreasonably multiplying of judicial proceedings. In light of that conclusion, there is no need for me to consider whether to invoke the inherent authority of this court to punish his conduct. Instead, I turn to the reasonableness of the fees sought. Having reviewed the submissions of counsel for Labgold, I have determined that it is appropriate to hold another evidentiary hearing that will focus on the reasonableness of those fees. Since counsel for Labgold will have to be a witness as to those fees, and will therefore be both witness and advocate in the same case, I urge his firm to consider whether it must hire counsel to represent it before

proceeding with that hearing, lest it violate the ethical canon against being advocate and witness in the same case.

The accompanying order sets the date for that hearing.