UNITED STATES, Appellant

v.

Michael C. MILLER, Senior Airman
U.S. Air Force, Appellee

No. 07-5004

CCA Misc. Dkt. No. 2007-02

United States Court of Appeals for the Armed Forces

Argued January 7, 2008

Decided May 20, 2008

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., joined.  BAKER, J., filed a dissenting opinion, in which EFFRON, C.J., joined.

<u>Counsel</u>

For Appellant:  Captain Jamie L. Mendelson (argued); Colonel Gerald R. Bruce and Captain Jefferson E. McBride (on brief); Major Matthew S. Ward, Major Donna S. Rueppell, and Captain Ryan N. Hoback.

For Appellee:  Dwight H. Sullivan, Esq. (argued); Lieutenant Colonel Mark R. Strickland and Captain Anthony D. Ortiz (on brief).

Military Judge:  Gary M. Jackson

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Miller, No. 07-5004/AF

Judge STUCKY delivered the opinion of the Court.

The Judge Advocate General of the Air Force certified an issue to this Court under Article 67(a)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(a)(2) (2000), asking whether a military judge abused his discretion in granting a motion to suppress all evidence resulting from Appellee's urinalysis. We find that the military judge did not abuse his discretion in suppressing the urinalysis results.[1]

I.

Senior Master Sergeant (SMSgt) Van Lingen was assigned as the Drug Demand Reduction Program Manager and the Drug Testing Program Administrative Manager at Westover Air Reserve Base, Massachusetts, an Air Force Reserve installation. As part of the installation drug testing program run with the tacit approval of the installation commander, SMSgt Van Lingen used a computer program to generate a random list of names of individuals to be tested. It also produced the notification letters provided to personnel selected for testing.

Appellee was a reservist who was serving an extended active duty tour. SMSgt Van Lingen's computer program randomly

_____

[1] Appellee's motion to attach documents in support of a motion to dismiss is granted. Appellee's motion to strike Appellant's opposition to Appellee's motion to dismiss is denied, and Appellee's motion to dismiss for lack of jurisdiction is denied. See United States v. Lopez de Victoria, 66 M.J. 67, 71 (C.A.A.F. 2008).

2

selected Appellee to provide a urine specimen for drug testing. Major Ryan, an Air Reserve Technician (ART), signed the letter notifying Appellee of the requirement to provide a urine specimen for testing.

ARTs are full-time civilian employees of the Air Force who are also members of the Air Force Reserve unit by which they are employed in their civilian capacity. Dep't of the Air Force, Instr. 36-108, Air Reserve Technician (ART) Program, Attachment 1 (July 26, 1994). In his civilian capacity, Major Ryan wore his military uniform and served as the assistant mission support officer. When serving on active duty, he was assigned as the mission support group vice commander. Major Ryan was serving in his civilian, not his military, capacity when he signed the letter notifying Appellee that he was required to provide a urine specimen.

Appellee had not been suspected of using drugs before his positive urinalysis test. Once he tested positive for cocaine, however, agents from the Air Force Office of Special Investigations called Appellee into their office for questioning. In response to their questions, Appellee admitted to using cocaine on about four occasions since he was ordered onto active duty status.

At trial, Appellee moved to suppress his confession and the results of his urinalysis test. He argued that the test was the

product of an unlawful order issued by a civilian ART who did not have command authority to issue the order and that the confession was the fruit of the unlawful urinalysis. The Government opposed the motion, arguing the order was lawful and a product of the installation commander's random urinalysis program. The military judge heard evidence and ruled that the testing of Appellee's urine was based on an unlawful order and was thus not incident to command. He suppressed the urinalysis results as an unlawful search and the confession as fruit of that search.

The Government gave proper notice and appealed to the United States Air Force Court of Criminal Appeals under Article 62, UCMJ, 10 U.S.C. § 862 (2000). The Court of Criminal Appeals affirmed the military judge's rulings. United States v. Miller, Misc. Dkt. No. 2007-02, 2007 CCA LEXIS 252, at *8, 2007 WL 2050646, at *4 (A.F. Ct. Crim. App. June 26, 2007) (unpublished). The Air Force Judge Advocate General certified the issue to this Court for consideration.

## II.

We review a military judge's decision to suppress or admit evidence for an abuse of discretion. United States v. Beckett, 49 M.J. 354, 356-57 (C.A.A.F. 1998); United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995). A military judge abuses his discretion when his findings of fact are clearly erroneous, the

court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law. See United States v. Gore, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing United States v. Wallace, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992); United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995)).

Evidence obtained from a military inspection is admissible at trial when relevant and not otherwise inadmissible under the Military Rules of Evidence. Military Rule of Evidence (M.R.E.) 313(a).

> An "inspection" is an examination of the whole or part of a unit, organization, installation, vessel, aircraft, or vehicle, including an examination conducted at entrance and exit points, conducted as an incident of command the primary purpose of which is to determine and to ensure the security, military fitness, or good order and discipline of the unit, organization, installation, vessel, aircraft, or vehicle. . . . An order to produce bodily fluids, such as urine, is permissible in accordance with this rule.

M.R.E. 313(b) (emphasis added).

The authority to order an inspection under M.R.E. 313 is directly tied to a commander's inherent authority; it is the connection with command authority, and the commander's responsibility to ensure fitness of a unit, that keeps a valid inspection scheme within constitutional parameters. United States v. Bickel, 30 M.J. 277, 280, 282 (C.M.A. 1990). This

tie, or connection, between the inspection and command authority is important in justifying the reasonableness of what is otherwise a warrantless search. Id. at 285-86.

Air Force installation commanders are tasked with ensuring that the service's drug testing program is conducted in accordance with all applicable directives. Dep't of the Air Force, Instr. 44-120, Drug Abuse Testing Program (July 1, 2000) [hereinafter AFI 44-120]. Unit commanders are responsible for directing that drug tests be conducted. Id. para. 4.7.6.1. A unit is a "military organization constituted by directives issued by HQ USAF." Dep't of the Air Force, Instr. 38-101, Air Force Organization para. 2.1.2. (Apr. 4, 2006) [hereinafter AFI 38-101]. Thus, we recognize that the term "unit commander" is not limited to an individual's immediate commander, but also includes higher-level commanders in the chain of command.

As discussed earlier, a valid inspection is conducted as an incident of command. But the Government failed to establish that any commander in Appellee's chain of command at the installation directed that a test be conducted. Although SMSgt Lingen testified that he ran the installation-wide urinalysis program on behalf of the installation commander, the Government failed to prove the existence of any local policy letter, directive, or other instruction to establish that Westover Air

Reserve Base had such a program.[2]  We recognize that a commander can establish a drug testing program such that random selection by the computer program equates to a direction to test.  There is, however, no evidence such was the case at Westover Air Reserve Base.  At the time he signed the letter directing Appellee to provide a urine specimen, Major Ryan was in civilian status and, therefore, not able to act as a commander.  AFI 38-101 para. 2.1.2.1.1; Op. JAGAF 1993/19, 5 Civ. Law Ops. 233, 234 (Feb. 22, 1993).  Under these facts, there is nothing that connects the letter directing Appellee to test with a legitimate exercise of command authority.  Thus Appellee's urinalysis test was not an incident of command and did not comply with M.R.E. 313.  Operating an inspection program on "auto-pilot," without command input, as was done here, neither constitutes a legitimate order to test nor satisfies the requirements of M.R.E. 313.

---

[2] The dissent would find that an Aerospace Medicine Operating Instruction, promulgated by the order of the 439th Aerospace Medical Squadron Commander, constitutes an exercise of the installation commander's inherent command authority to inspect members assigned to the installation.  However, there is no evidence the installation commander delegated his responsibilities under AFI 44-120 to the Aerospace Medical Squadron Commander, nor is there evidence the Aerospace Medical Squadron Commander was in Appellee's chain of command for the purposes of M.R.E. 313 inspections.

III.

Under these circumstances, we affirm the decision of the United States Air Force Court of Criminal Appeals and sustain the military judge's suppression of Appellee's urinalysis and the resulting confession.

<u>United States v. Miller</u>, No. 07-5004/AF

BAKER, Judge, with whom EFFRON, Chief Judge, joins (dissenting):

I disagree with the majority's conclusion that there was no command-directed urinalysis program at Westover Air Reserve Base (ARB). To the contrary, the installation commander established a program under Military Rule of Evidence (M.R.E.) 313; Appellee was selected to provide a urinalysis by a neutral official who used an authorized random selection process compliant with M.R.E. 313; Appellee provided a sample; the result was positive; and, it was admissible under M.R.E. 313. Therefore, I would reverse the decision of the United States Air Force Court of Criminal Appeals. Moreover, the lawful order analysis applied by the military judge in suppressing the urinalysis in this case, is confusing and off-target and should not be affirmed by this Court. As a result, I respectfully dissent.

The majority invalidates the result of Appellee's urinalysis test on the grounds that:

(1) "[T]he Government failed to establish that any commander in appellee's chain of command directed that a test be conducted";

(2) There is "no evidence" that there was a command-directed drug testing program at Westover Air Reserve Base; and

(3) "[T]here is nothing that connects the letter directing Appellee to test with a legitimate exercise of command authority."

<u>United States v. Miller</u>, __ M.J. __ (6-7) (C.A.A.F. 2008).

In my view, each of these conclusions is erroneous based on the following facts and analysis:

First, Air Force Instruction 44-120 states at the top in bold type: "BY ORDER OF THE SECRETARY OF THE AIR FORCE." Dep't of the Air Force, Instr. 44-120, Drug Abuse Testing Program at 1 (July 1, 2000) [hereinafter AFI 44-120]. It also states: "COMPLIANCE WITH THIS PUBLICATION IS MANDATORY." Further, the instruction directs commanders to ensure that drug abuse testing programs aboard their installations are conducted in accordance with all applicable higher headquarters guidance. Id. para, 4.7.1.1. It also directs that random inspections "should be the predominate type of test used." Id. para. 4.7.1.2. In essence, the instruction assigns overall responsibility for drug program implementation to installation commanders.

Second, AFI 44-120 directs that the Reserve Medical Unit Commander (in the case of a reserve base) shall serve as the office of primary responsibility for installation drug testing programs. Id. para. 4.7.2.

Third, the publicly accessible website for Westover Air Reserve Base lists Brigadier General (Brig Gen) Wallace W. Farris Jr. as "commander of the Air Force Reserve Command's 439th Airlift Wing, Westover Air Reserve Base, Mass."

Westover Air Reserve Base, http://www.westover.afrc.af.mil (last visited Apr. 4, 2008). Brig Gen Farris is the most senior officer listed and there is no other officer listed as the base commander.

Fourth, the record includes a copy of Aerospace Medicine Squadron Operating Instruction 44-104 promulgated on January 4, 2005, "BY ORDER OF THE COMMANDER 439th AEROSPACE MEDICINE SQUADRON." Dep't of the Air Force, Aerospace Medicine Operating Instr. 44-104, Drug Abuse Testing Program at 1 (Jan. 4, 2005) [hereinafter AMDS Operating Instruction]. According to the website, the 439th Aerospace Medicine Squadron is a subordinate command under the 439th Airlift Wing at Westover ARB. The second sentence of the AMDS Operating Instruction states that it "directs the 439th Aerospace Medicines Squadron's responsibilities in the Drug Demand Reduction Control Program at Westover ARB, MA." Id. (emphasis added). The defense did not contend at trial, and the military judge did not find, that the AMDS Operating Instruction was invalid, or that Appellee was not subject to the instruction. On the contrary, both parties and the military judge proceeded on the basis that the program was in existence and that Appellee was subject to it.

Finally, this directive states that "Once selected and notified for testing, only [the] 439th Airlift Wing Commander can release an individual from testing." Id. para 4.2.

Based on the foregoing, the medical squadron generated Appellee's name through random selection and conveyed his name to Major (Maj) Ryan for notification. Thus, Appellee was directed to undergo random urinalysis based on the authority of the installation commander, Brig Gen Farris, pursuant to the Secretary of the Air Force's directive. Brig Gen Farris exercised his command authority through the Aerospace Medicine Squadron, as provided in the AFI 144-120.

Notwithstanding the existence of these two directives, the majority leaves one to conclude that: (1) Brig Gen Farris ignored the secretary's directive to establish a urinalysis program, (2) the Aerospace Medicine Squadron commander purportedly acted with the authority of the installation commander without having in fact received authority from the installation commander to do so, and/or (3) individuals selected for testing could obtain permission from the wing commander for exemption from a urinalysis program that, according to the majority, was never authorized by him in the first place. A more precise record might indicate exactly when, where, and how the installation commander, or his predecessors, ordered

implementation of the base urinalysis program.  Nonetheless, this record conclusively indicates that the program at Westover, ARB, was conducted as an incident of command.

As a result, any legal issues surrounding Maj Ryan's authority to issue an order are not relevant.[1]  As indicated during his testimony, Maj Ryan was performing a ministerial function in communicating to Appellee his selection for random urinalysis pursuant to the base testing program.[2]  Thus, as the Government has noted, the real issue is not whether the order signed by Maj Ryan was lawful, but rather, whether the urinalysis inspection was administered properly as an incident of command in accordance with M.R.E. 313.  The short answer is yes; it was conducted as an incident of Brig Gen Farris's command in accordance with the requirements set forth by the Secretary of the Air Force.

As a separate matter, I think it important for this Court to distinguish its analysis from that used at trial.  The military judge's analysis is erroneous as applied to M.R.E. 313.

---

[1] It might be a different matter had Appellee been charged with violating Maj Ryan's order, but here the only matter in issue was the procedure used to seize Appellee's urine.

[2] Maj Ryan himself testified that he was not issuing an order at the time he directed Appellee to report for a urinalysis, instead he was performing the ministerial function of notification incident to the installation commander's directive that Appellee submit to a urinalysis.

<u>United States v. Miller</u>, No. 07-5004/AF

The military judge erred by focusing on the authority to issue a punitive order under Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000). There is no requirement under M.R.E. 313 that an individual be notified of his/her selection to participate in an inspection through a punitive order under Article 92, UCMJ. If the service chooses to enhance its management of the urinalysis program by requiring issuance of a punitive and enforceable order, that is a matter of internal management. A regulation providing for communication of selection through a punitive order, although permissible, is not required. Such a regulation is for the benefit of the service, not the individual, and does not create an individual right to exclude evidence under M.R.E. 313. See <u>United States v. Caceres</u>, 440 U.S. 741, 752-53 (1979). The critical question is whether such an inspection is conducted as an incident of command consistent with M.R.E. 313.

Further, the analysis is problematic to the extent it is viewed as applying to lawful orders generally. Quoting an Air Force Instruction and an Air Force Court of Criminal Appeals case, the military judge concluded:

> For an "inspection order" or order to submit to a random urinalysis to be lawful there must be, <u>inter alia</u>, a unity of status between the commander who issues the order and the subordinate who receives the order. "Commanders must have unity of status with their troops to fully enforce their orders. Conversely, before exposing a member who is subjected to the UCMJ to disciplinary action for an offense

6

based on a commander's order, it is evident that both the member and the commander must be subject to the UCMJ."

. . . .

"Although they may hold supervisory positions and provide work direction, civilians cannot command Air Force units. . . ."

Emphasis and citations omitted. Based on these factors the military judge further concluded that Maj Ryan "was not on active duty, was not subjected to the UCMJ and thus did not have unity of status with the Accused . . . As such . . . Major [Ryan's] 12 September 2006 written order to the Accused to provide a urine sample was unlawful."

The concepts of "unity of status," jurisdiction under the UCMJ, and "command" may be helpful in determining whether an action is taken as an "incident of command."[3] Certainly, if an inspection is not conducted as an incident of command (or is not otherwise authorized), then an order to submit to such an inspection would not be lawful. These factors may also be helpful in determining whether to prosecute under Article 92, UCMJ. However, these factors are not generally determinative as to whether an order is "lawful" when this term is used in a more common vernacular as opposed to its meaning under Article 92,

---

[3] I say "may," because the nomenclature seems to be drafted for lawyers by lawyers, rather than for those personnel who most need to understand the concept of lawful command, the officers who exercise it and the airmen who are subject to it.

UCMJ.  For sure, Maj/Mr. Ryan could not have issued a lawful order while acting in <u>his</u> civilian capacity.  However, the President, Secretary of Defense, and Secretary of the Air Force most certainly can issue "lawful" orders to military personnel, notwithstanding the absence of any unity of status with the military personnel over whom they exercise constitutional and statutory command, in the case of the President and the Secretary of Defense,[4] or administrative control, in the case of the Secretary of the Air Force.  Recall that AFI 44-120, at issue in this case, was transmitted in the form of an "ORDER" from the Secretary of the Air Force.

Reliance on the factors enunciated by the military judge to determine whether an order is lawful might also place in doubt the status of many general, or standing orders, if applied literally and not otherwise limited to questions involving M.R.E. 313.  Consider, for instance, the case of a commanding general's standing orders that remain in effect after the general leaves command and thus, loses "unity of status" with the members of that command.

---

[4] "Unless otherwise directed by the President, the chain of command to a unified or specified combatant command runs --

(1) from the President to the Secretary of Defense; and

(2) from the Secretary of Defense to the commander of the combatant command."

10 U.S.C. § 162(b) (2000).