# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38942**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Hank W. ROBINSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 May 2017

————————————

*Military Judge:* Matthew P. Stoffel.

*Approved sentence:* Bad-conduct discharge, confinement for 1 month, and reduction to E-1. Sentence adjudged 21 August 2015 by GCM convened at Beale Air Force Base, California.

*For Appellant:* Major Mark. C. Bruegger, USAF; Major Jeffrey A. Davis, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before J. BROWN, SANTORO, and HARDING, *Appellate Military Judges.*

Judge SANTORO delivered the opinion of the court, in which Senior Judge J. BROWN and Judge HARDING joined.

————————————

**PUBLISHED OPINION OF THE COURT**

————————————

SANTORO, Judge:

Officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his plea, of one specification of intentionally communicating indecent language to a child under age 16 in violation of Article 120b,

Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1] The adjudged and approved sentence was a bad-conduct discharge, confinement for one month, and reduction to E-1.

Appellant raises three assignments of error: (1) the military judge erred in denying Appellant's motion to suppress text messages found on his cellular telephone, (2) the military judge erred in his instructions on proof beyond a reasonable doubt, and (3) trial counsel's sentencing argument was improper. We disagree and affirm.

## I. BACKGROUND

On 20 August 2014, Appellant exchanged a series of text messages with his 14-year-old stepdaughter, AH. In those messages, Appellant said, "I'm going to kiss you where it smells funny," "Your [sic] going get a big wet one," and "I'm going to take a shower with u [sic]."

## II. DISCUSSION

### A. Motion to Suppress

The Air Force Office of Special Investigations (AFOSI) received an allegation that Appellant had sexually assaulted AH. As their investigation into that allegation was coming to its end, agents attempted to interview Appellant. As will be more fully discussed below, although Appellant invoked his right to consult with counsel and declined to speak with investigators, he signed an Air Force Form 1364 ("Consent for Search and Seizure," hereafter "consent form") and provided investigators the passcode to his cellular phone. A subsequent search of his cellular phone revealed the text messages he exchanged with AH, which was the evidence supporting his conviction.

Appellant moved to suppress the text messages, arguing that his consent was not voluntary and that agents violated his Fifth Amendment and Article 31, UCMJ, 10 U.S.C. § 831, rights when they asked him for the passcode to his phone. The military judge denied the motion to suppress. Appellant argues that the military judge erred and also asserts two new bases for suppression, neither of which was raised at trial: that AFOSI's search exceeded the scope of his consent and that he revoked his consent prior to the search.

---

[1] The court-martial acquitted Appellant of one specification alleging rape of a child, one specification alleging aggravated sexual contact with a child, and three specifications of assault consummated by a battery.

We review a military judge's denial of a motion to suppress for an abuse of discretion. *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin*, 58 M.J. 358, 360 (C.A.A.F. 2003)). Under this standard, we uphold the military judge's findings of fact unless they are clearly erroneous or unsupported by the record. *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007). We review de novo any conclusions of law. *Chatfield*, 67 M.J. at 437. A military judge abuses his discretion when (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) incorrect legal principles were used; or (3) his application of the correct legal principles to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "Further, the abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)).

Searches conducted pursuant to a warrant or authorization based on probable cause are presumptively reasonable, whereas warrantless searches are presumptively unreasonable unless they fall within a few specifically-established and well-delineated exceptions. *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016). Consent is a specifically-established exception to both the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). "Property . . . may be seized with consent consistent with the requirements applicable to consensual searches under Mil. R. Evid. 314." Mil. R. Evid. 316(c)(3). "Consent [to search] may be limited in any way by the person granting consent, including limitations in terms of time, place, or property, and may be withdrawn at any time." Mil. R. Evid. 314(e)(3). The Government bears the burden of showing the applicability of the consent exception. *Hoffmann*, 75 M.J. at 124.

The military judge made extensive findings of fact in his ruling on the motion, all of which are amply supported by the record and not clearly erroneous.

Investigators read Appellant his Article 31, UCMJ, rights and advised him that he was suspected of sexual assault of a child in violation of Article 120, UCMJ.[2] Appellant acknowledged his rights and requested counsel.

---

[2] The alleged conduct occurred prior to the enactment of Article 120b, UCMJ.

Agents then completed their administrative process, including the taking of fingerprints and photographs.

Special Agent (SA) JL then asked Appellant whether the AFOSI agents could "look through" his cellular telephone for information related to their investigation. Appellant agreed and SA JL told him they would complete the paperwork (the consent form) "in a little bit." Appellant signed the consent form shortly thereafter.

The verbal request for consent occurred approximately ten minutes after Appellant entered the interview room and the consent form was completed approximately eight minutes later. One minute after that, SA JL asked Appellant for the passcode for his phone so the agents would not "mess up" the phone. Appellant provided it.

After obtaining Appellant's passcode, SA JL gave the phone to another agent, who extracted its data by making an electronic copy. Agents then returned the phone to Appellant, who left the AFOSI offices shortly thereafter. Later that day, Appellant visited the local area defense counsel, who notified law enforcement that Appellant revoked any consent he had previously provided.

The military judge found that Appellant "understood he was being asked for consent to allow law enforcement to search the contents of his phone for evidence relating to allegations of sexual assault of his stepdaughter," that he understood he could withhold consent, and chose to provide consent because he did not believe any relevant information would be found on his phone.

These facts raise two distinct analytic issues: (1) whether Appellant's consent to search his phone was valid and (2) whether, after Appellant granted his consent, investigators permissibly asked for the passcode to that cell phone.

**1. Voluntariness of Consent to Search iPhone**

Appellant argues that the military judge erred in concluding that his consent was voluntarily given because, he asserts, law enforcement reinitiated questioning after he asserted his right to counsel.

It is settled law that a request for consent to search is not an interrogation, and consent is ordinarily not a "statement." *United States v. Frazier*, 34 M.J. 135, 137 (C.M.A. 1992). At first blush, then, Appellant's argument must surely fail. However, he attempts to distinguish his case from *Frazier* by arguing that because investigators asked several questions to ensure his request for counsel was unambiguous, asked about the whereabouts of someone else potentially related to the investigation (after he provided verbal consent), and that they later asked about the meaning of his tattoos, his plans for the

upcoming Christmas holiday, and what his work schedule would be, these "deceptive tactics" were the reinitiation of an interrogation. Therefore, he argues, because agents reinitiated interrogation they could not validly ask for his consent to search.

Appellant seeks support for his position primarily from two sources: *United States v. Hutchins*, 72 M.J. 294 (C.A.A.F. 2013), and *United States v. Bondo*, No. ACM 38438, (A.F. Ct. Crim. App. 18 Mar. 2015) (unpub. op.), *available at* http://afcca.law.af.mil/content/opinions_cnm_2015.html. Neither is availing.

In *Hutchins*, investigators gave *Miranda*[3] and Article 31, UCMJ, rights. Hutchins invoked his right to counsel, the interview ended, and he was confined. A week later, without having provided Hutchins an attorney, an investigator asked for and received consent to search his belongings. While Hutchins was reading the consent form, he asked the investigator if the door was still open to give his side of the story. The investigator told him that they could speak again, but not that night. The investigators completed the consent search. The following morning, after being re-advised of his rights, Hutchins provided a detailed written confession.

The issue before the Court of Appeals for the Armed Forces (CAAF) was not whether Hutchins' consent to search was valid—the lead opinion, the concurrence, and the dissent all assume that it was—but rather it was who reinitiated the communication that ultimately led to the interrogation and confession the following day. *Hutchins* reaffirmed *Frazier*'s holding (and long-standing precedent) that a request for consent to search is not an interrogation. 72 M.J. at 297; *see United States v. Burns*, 33 M.J. 316, 319–20 (C.M.A. 1991) (investigators may request consent to search from a suspect in custody even after invocation of rights); *see also United States v. Roa*, 24 M.J. 297, 299 (C.M.A. 1987) ("Neither Article 31, UCMJ, 10 U.S.C. § 831, nor Fifth-Amendment safeguards are infringed by a request for consent to search, as such a request is not interrogation . . . .").

Thus, *Hutchins* does not, per se, preclude a post-invocation request for consent to search. And nothing in the facts of this case causes us to question the military judge's ruling that Appellant validly and voluntarily consented to a search of his cellular telephone. The military judge's findings of fact are supported by the evidence, he cited the applicable law, and his conclusion is not clearly unreasonable.

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## 2. Request for Passcode

Our conclusion that Appellant's consent to search his phone was voluntary does not end the inquiry, as he also argues that the request for his passcode constituted interrogation.

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "To qualify for the Fifth Amendment privilege a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 189 (2004).

In *Edwards v. Arizona*, 451 U.S. 477, 485 (1981), the Supreme Court created a bright-line rule barring police from interrogating an accused in custody once he clearly asserts his right to counsel, unless an attorney is provided, or "the accused himself initiates further communication, exchanges, or conversations with the police." *See also* Mil. R. Evid. 305(e)(3)(A). The purpose of the *Edwards* rule is to preserve "the integrity of an accused's choice to communicate with police only through counsel . . . ." *Patterson v. Illinois*, 487 U.S. 285, 291 (1988).

To be sure, *Edwards* does not bar all post-invocation communications between police and suspects. Without running afoul of the Fifth Amendment, police may, for example, ask for a suspect's name, address, date of birth, and other questions as part of the routine booking process because those questions are not reasonably likely to elicit an incriminating response. *Pennsylvania v. Muniz*, 496 U.S. 582 (1990). What *Edwards* bars is "interrogation."

The term "interrogation"

> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit *an incriminating response* from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (emphasis added).

The concurring opinion in *United States v. Roa* noted that:

> interrogation is for the purpose of eliciting from a suspect communications about the matter under investigation. However, a consent to search *does not of itself communicate any information about the investigated crime; and it is not a statement regarding an offense*, *see* Art. 31(b). Therefore, requesting consent to search property in which a suspect has an interest is not prohibited by his prior request for counsel, because *Edwards provides protection only as to interrogation.*

24 M.J. at 301 (Everett, C.J., concurring) (emphasis added).

With respect to Appellant's case, the military judge ruled:

> [T]his court is relying upon the general proposition as reasserted in *Hutchins*, namely, that "the decision [in *Hutchins*] does not alter the 'basic proposition' that a request for consent to search itself does not implicate the Fifth Amendment because it is not considered 'interrogation' reasonably likely to elicit an incriminating response." Examining the totality of the circumstances in this case, this court concludes that the request for the accused's passcode was not a re-initiation of any interrogation and did not open a more generalized discussion relating directly or indirectly to the investigation. The agents did not begin any express questioning nor did they use any words or actions that the agents should have known were reasonably likely to elicit an incriminating response from the accused. To the contrary, their question was logically connected to the consent which the accused had just formalized approximately one minute earlier. The accused, having just read and signed the written consent form, had full knowledge that he was providing voluntary consent to a search of his phone.
>
> Further, the accused's providing of his passcode was not an incriminating response. The act-of-production doctrine holds that when the accused is compelled to produce incriminating evidence, the Fifth Amendment will apply. For the production to be testimonial, it must implicitly convey statements of fact, such as admitting that evidence exists, that the evidence is authentic or that the evidence was within the accused's control. The accused providing his passcode to agents was not testimonial. He was not coerced into providing his passcode. No interrogation tactics were applied, the agents did not raise their voices, and they did not make any threats or promises to in-

duce the accused into providing his passcode. While the defense argues that Special Agent [JL's] statement about not wanting to mess up the accused's phone by attempting to access it without the passcode was coercive, it was merely a statement made with full knowledge by both the maker and the receiver of the statement that too many incorrect attempts to enter the passcode could damage and/or wipe the contents of the phone. Special Agent [JL] gave no indication to the accused that the agents either had already attempted to or would attempt to access the phone without the password. Further, the statement was made as a request, not a demand. Additionally, the accused was aware of his rights, and in fact had just exercised his right to counsel minutes earlier. Accordingly, Special Agent [JL] did not violate the accused's constitutional or Article 31 rights by asking for and utilizing the accused's passcode in the search of the accused's phone.

The military judge's ruling cited above included both findings of fact and conclusions of law. His findings of fact are amply supported by the record and not clearly erroneous.

These facts, then, present this issue for our resolution: Did investigators' request for the passcode to Appellant's cellular telephone, after Appellant had invoked his right to counsel but also voluntarily consented to a search of that phone, violate the Fifth Amendment where investigators had no reason to believe that the passcode itself would be incriminating? This is a question of law we review de novo and appears to be a question of first impression.

The Government highlights a string of cases finding no Fifth Amendment violation when a suspect is compelled by lawful process to provide a computer passcode.[4] We find them only marginally relevant to our analysis as the ex-

---

[4] *See generally State v. Stahl*, 206 So. 3d 124 (Fla. Dist. Ct. App. 2016) (motion to compel defendant to enter passcode into the cellular phone did not violate Fifth Amendment); *United States v. Fricosu*, 841 F. Supp. 2d 1232 (D. Col. 2012) (court order requiring defendant to produce the unencrypted contents of her laptop did not violate Fifth Amendment); *In re Grand Jury Subpoena (Boucher)*, 2009 U.S. Dist. LEXIS 13006 (D. Vt. 19 Feb. 2009) (subpoena compelling defendant to decrypt his laptop did not offend Fifth Amendment); *Commonwealth v. Gelfgatt*, 11 N.E.3d 605, 612 (Mass. 2014) (defendant can be compelled to decrypt digital evidence where act would not communicate facts beyond which defendant had already admitted). *But see United States v. Doe (In re Grand Jury Subpoena Duces Tecum)*, 670 F.3d 1335 (11th Cir. 2012) (subpoena requiring defendant to produce decrypted contents of his hard drives violated Fifth Amendment); *United States v. Kirschner*, 823 F. Supp. 2d 665

*(Footnote continues on next page)*

istence of an order to produce the information is not present in Appellant's case and there is no argument that Appellant's provision of his passcode was either compelled or mere acquiescence to an otherwise-valid order.

Two Circuit Courts of Appeals have considered similar issues. In the first, the U.S. Court of Appeals for the Fourth Circuit held that when the defendant was asked for and provided his computer password after he had invoked his right to counsel, there was no Fifth Amendment violation because "[a]ny self-incriminating testimony that he may have provided by revealing the password was already a 'foregone conclusion' because the Government independently proved that [he] was the sole user and possessor of the computer." *United States v. Gavegnano*, 305 Fed. Appx. 954 (4th Cir. 2009). This so-called "foregone conclusion" doctrine has been adopted by the Supreme Court and other federal courts in other contexts. *See, e.g.*, *Fisher v. United States*, 425 U.S. 391, 408 (1976) (finding that while the act itself of complying with a summons for documents had "communicative aspects of its own, wholly aside from the contents of the papers produced"—including tacitly conceding the existence and location of the documents—the matters communicated were, under the circumstances, a "foregone conclusion" that added "little or nothing to the sum total of the Government's information . . . ." "Under these circumstances . . . no constitutional rights are touched. The question is not of testimony but of surrender.") (internal cites and quotation marks omitted); *United States v. Hubbell*, 530 U.S. 27, 44-45 (2000) (distinguishing *Fisher* because the act of Hubbell's compliance itself communicated facts not known to the Government and were not a foregone conclusion); *United States v. Apple Mac Pro Computer*, 851 F.3d 238, 248 (3d Cir. 2017) (upholding order to decrypt files because "any testimonial component of the production of decrypted devices added little or nothing to the information already obtained by the Government" and were thus a foregone conclusion); *United States v. Doe (In re Grand Jury Subpoena Duces Tecum)*, 670 F.3d 1335, 1345–46 (11th Cir. 2012) ("[U]nder the "foregone conclusion" doctrine, an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with 'reasonable particularity' that, at the time it sought to compel

---

(E.D. Mich. 2010) (subpoena calling for defendant to testify to the password he utilizes for his computer violated Fifth Amendment); *Commonwealth v. Baust*, 89 Va. Cir. 267 (Va. Cir. Ct. 2014) (motion to compel production of defendant's passcode to unlock cellular phone violated Fifth Amendment, but compelling use of fingerprint to unlock cellular phone did not violate Fifth Amendment).

the act of production, it already knew of the materials, thereby making any testimonial aspect a 'foregone conclusion.'").

In *United States v. Venegas*, 594 Fed. Appx. 822 (5th Cir. 2014), the defendant was asked both for consent to search his cellular telephone as well as for its password. The Fifth Circuit rejected the claim that Venegas was entitled to *Miranda* warnings before he was asked for consent or his password. Finding legally irrelevant whether Venegas was in custody at the time of the request (and thus entitled to *Miranda* warnings), the Fifth Circuit held that the requests for consent to search and for the phone's passcode were "neither testimonial nor communicative in the Fifth Amendment sense." *Id.* at 827 (quoting *United States v. Stevens*, 487 F.3d 232, 242–43 (5th Cir. 2007)).

In the unpublished decision of *United States v. Bondo*, a panel of this court held that asking "a suspect for a password to a cell phone that they believe contains evidence of an offense is more than a routine incident of the custodial relationship." *Bondo*, unpub. op. at 9. In so holding, the panel seemed to suggest, relying on *Hutchins*, that anything other than routine incidents of a custodial relationship would be a violation of the 5th Amendment. We are unpersuaded by this suggestion in *Bondo* for three reasons. First, *Bondo* was not premised on agents' attempt to obtain a passcode in conjunction with validly-given consent to search. Instead, Bondo acquiesced to agents' request for his passcode in the face of an already-issued search authorization. *See, e.g., United States v. Wallace*, 66 M.J. 5, 9 (C.A.A.F. 2008) (acquiescence may not constitute free and voluntary consent). Second, *Bondo* was based on the panel's belief that *Hutchins* stood for the proposition that "where [Hutchins] invoked his right to counsel and investigators later asked to search his belongings, this action violated [his] Fifth Amendment rights because the investigator initiated contact to further the investigation." *Bondo*, unpub. op. at 9. Third, *Bondo* failed to consider whether the question at issue constituted *interrogation* as defined by *Innis*.

We reject *Bondo's* expansive interpretation of *Hutchins*. The CAAF suppressed Hutchins' post-invocation confession because they concluded the investigator's request for consent to search was a reinitiation of communication and Hutchins had not been given access to counsel during his seven days of post-invocation confinement. Therefore, applying *Edwards*, the *confession* that resulted from the subsequent renewed *interrogation* was suppressed.

We thus turn directly to the question framed above: whether agents' request for Appellant's passcode in these circumstances constituted *interrogation*. At the outset, we note that one might reasonably question how a request for consent to search, made after invocation of the right to remain silent, would not be construed as a request that the suspect provide incriminating evidence. The reason it does not is that, as noted in *Roa*, such a request is

"not interrogation," 24 M.J. at 299, and the response itself (yes or no), "does not of itself communicate any information about the investigated crime." 24 M.J. at 301 (Everett, C.J., concurring).

In this case, we have a request by law enforcement for Appellant's passcode, made after he invoked his right to counsel. Because there was no dispute as to Appellant's ownership, dominion, or control over the phone, his knowledge of the passcode did not incriminate him. Investigators had no reason to believe that the passcode itself would be incriminating or communicate any information about the crime.

Therefore, applying *Roa* and *Innis*, we conclude that the request for the passcode did not constitute interrogation in violation of the Fifth Amendment. We also conclude that under the facts of this case, unlike in *Hutchins*, we need not determine whether investigators' request for the passcode constituted a reinitiation of communication that represented a desire to open a more "generalized discussion relating directly or indirectly to the investigation." *Hutchins*, 72 M.J. at 298 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983)). This is because here, Appellant never engaged in a post-invocation "generalized discussion." Consequently, there was no post-invocation interrogation or statement that the Government sought to admit agaist Appellant.

The military judge did not abuse his discretion in denying the motion to suppress.

### 3. Arguments Not Raised at Trial

For the first time on appeal, Appellant argues that the agents' search of his cellular telephone exceeded the scope of his consent because he believed they were only going to "look through" his phone, not extract and copy data from it. He also asserts that law enforcement conducted its search after he revoked his consent.

Prior to ruling on the motion to suppress, the military judge specifically asked trial defense counsel to clarify the bases for the motion. *See* Mil. R. Evid. 311(d)(3) (military judge may require the defense to specify the grounds upon which the defense moves to suppress or object to evidence). Defense counsel replied that there were only two: that Appellant's consent to search was involuntary and that the request for his passcode violated his Fifth and

Sixth Amendment rights.[5] Failure to object constitutes waiver. Mil. R. Evid. 311(d)(2)(A). As Appellant not only had the opportunity to raise these issues, but affirmatively told the military judge that he was basing his motion to suppress on other grounds, he has waived appellate consideration of these claims. *United States v. Brown*, 13 M.J. 810 (A.F.C.M.R. 1982).

## B. Instructions on Proof Beyond a Reasonable Doubt

Prior to deliberations, the military judge instructed using the standard Air Force reasonable doubt instruction. Appellant did not object. Appellant now argues that this instruction violates Supreme Court precedent prohibiting a trial judge from "directing the jury to come forward with a [guilty verdict], regardless of how overwhelmingly the evidence may point in that direction." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977). The CAAF recently decided this issue adversely to Appellant. *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017).

## C. Prosecution Sentencing Argument

Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant asserts that when arguing for a sentence, the trial counsel improperly referenced testimony about an offense of which he was acquitted. Improper argument involves a question of law that we review de novo. *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Trial counsel is entitled "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* However, it is error for trial counsel to make arguments that "'unduly . . . inflame the passions or prejudices of the court members.'" *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (alteration in original) (quoting *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)); Rule for Courts-Martial 919(b) Discussion.

Appellant's nine-year-old daughter NR testified, during findings, that Appellant repeatedly struck and choked her. She also stated that she was testifying "[t]o help my father, and to change his self [sic], and to be a good person." She did not testify with respect to the single offense of which Appellant was convicted. During presentation of sentencing evidence, Appellant told the

---

[5] As noted above, the Sixth Amendment right to counsel is inapplicable to this case because charges had not yet been preferred. *United States v. Kerns*, 75 M.J. 783, 788 n.1 (A.F. Ct. Crim. App. 2016).

members that he has "many flaws," sought "outside help," and wanted to take every opportunity to "better [himself]."

During sentencing argument, trial counsel referenced NR's testimony:

> Members, [continuing to send AH inappropriate text messages despite her efforts to get him to stop] speaks to his rehabilitative potential. He doesn't stop when he recognizes something wrong. He knows it's wrong, and he keeps doing it. When we recommend six months of confinement, the government knew that maximum punishment in this case is 15 years. We took into consideration what he has done for the Air Force, who he is, and this specific offense. His own nine-year-old, who came here yesterday, said he needs help. We're not asking you to punish him for something that you find him not guilty of. We are asking you to sentence him appropriately for what you find him guilty of, for his text messages and for his way of thinking.

And later:

> He doesn't care. He doesn't care what the requirements are here. What kind of example does that show to his own children? It just shows complete lack of rehabilitative potential, because while he is waiting for this court-martial, he commits another criminal action[6] and that is why he needs six months of confinement, so he can be put in a restrictive environment. So he can get the help that is a nine-year-old wants him to get. He needs help outside of the Air Force, because, clearly, what we have to offer him is not enough.

Because trial defense counsel failed to object, we review for plain error. *Marsh*, 70 M.J. at 104. To establish plain error Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)) (quotation marks omitted).

The military judge properly instructed the members that all the evidence they heard was relevant when determining Appellant's sentence. Appellant does not challenge that instruction. In each instance noted above, trial counsel referenced NR's testimony in the context of Appellant's rehabilitative po-

---

[6] While awaiting trial, Appellant used marijuana in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, for which he received non-judicial punishment under Article 15, UCMJ, 10 U.S.C. § 815.

tential and specifically and correctly argued that the members should *not* sentence Appellant for anything other than the offense of which he was convicted. The military judge's instructions also directed the members to sentence Appellant only for the single offense of which he was convicted.

Trial counsel's argument was not error, plain or otherwise. The references to NR's testimony did not encourage or implore the members to sentence Appellant for offenses of which he was acquitted. Appellant himself raised the issue of having flaws and seeking outside help; trial counsel's argument merely buttressed Appellant's statements with other evidence in the record. We do not believe that the trial counsel's comments, taken in context, can fairly be said to have unduly inflamed the passions or prejudices of the court members.

## III. CONCLUSION

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court