Judge RYAN-,
dissenting.
I disagree that the Government violated Appellee’s legal rights by asking him to enter *421 the passcode to unlock his iPhone, a device the Government had the legal right to seize and search pursuant to a valid search authorization. It is abundantly clear that such a request does not constitute an “interrogation,” see Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Military Rule of Evidence (M.R.E.) 305(c)(2), in derogation of the Fifth Amendment’s protection-against “being compelled in any criminal case to be a -witness against himself.” U.S. Const, amend. V [hereinafter Fifth Amendment]; cf. United States v. Seay, 60 M.J. 73, 78 (C.A.A.F. 2004) (“Edwards [was] adopted in M.R.E. 305[ (f) (version in force in 2002, now M.R.E. 305(c)(2), (4))].”). And, even assuming it could constitute a testimonial statement, the entry of a passcode into a phone known to belong to Appellee does not constitute an incriminating statement.[1] Therefore, I respectfully dissent.
I.
We review a military judge’s ruling on a motion to suppress for an abuse of discretion. United States v. Keefauver, 74 M.J. 230, 233 (C.A.A.F. 2015). In doing so, “we consider the evidence in the light most favorable to the prevailing party.” United States v. Cowgill, 68 M.J. 388, 390 (C.A.A.F. 2010) (quotation marks omitted). This Court reviews findings of fact for clear error and conclusions of law de novo. United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007). “Whether an interrogation occurred is a question of law, reviewable de novo by ,.. this Court.” United States v. Kosek, 41 M.J. 60, 63 (C.M.A. 1994); cf. United States v. Davis, 773 F.3d 334, 338 (1st Cir. 2014); Endress v. Dugger, 880 F.2d 1244, 1249 (11th Cir. 1989).
I agree that Appellee properly invoked his right to counsel and was in custody at the time of the request. But even reviewing the facts in the light most favorable to Appellee, the military judge erred as a matter of law in concluding-that the below request constitutes interrogation:
If you could unlock it, great, if you could help us out. But if you don’t, we’ll wait on a—for a digital forensic expert to unlock it.[2]
An “interrogation” does not occur unless law enforcement officers ask questions “reasonably likely to elicit an incriminating response from the suspect.” Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (emphasis added).
First, it seems dubious at best to assume that Appellee’s act of unlocking his iPhone by physically entering his passcode constituted a “testimonial” event. See United States v. Venegas, 594 Fed.Appx. 822, 827 (6th Cir. 2014) (per curiam) (concluding that defendant’s consent to search his cellular telephone and provision of his passcode were “neither testimonial nor communicative in the Fifth Amendment sense” (quotation marks omitted)).
Indeed, the majority opinion has no clear testimonial statement to work with—despite it being a fundamental prerequisite for triggering the Fifth Amendment inquiry to which Edwards is tied. See United States v. Roa, 24 M.J. 297, 299 (C.M.A. 1987) (concluding that the prophylactic Edwards rule does not prohibit consent requests, because the Fifth Amendment privilege, and hence Edwards, “protects only testimonial evidence” (emphasis added)). Edwards—like Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)—merely established a procedural safeguard to protect against the admission into evidence of self-incriminating testimony in response to interrogation. Accordingly, Edwards established a presumption that such statements, made af *422 ter a suspect had invoked his right against self-incrimination, are compelled, i.e., involuntary, See Maryland v. Shatzer, 559 U.S. 98, 106, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) (“Edwards’ presumption of involuntariness has the incidental effect of ‘conserving judicial resources which would otherwise be expended in making difficult determinations of voluntariness.” (internal brackets omitted) (citation omitted)). The majority starts by arguing that “asking Appellee to state his passcode involves more than a mere consent to search; it asks Appellee to provide the Government with the passcode itself, which is incriminating information.” United States v. Mitchell, 76 M.J. 413, 418, 2017 WL 3841376 (C.A.A.F. 2017). However, Appellee declined to state or otherwise speak his pas-scode to the Government. He declined. There is nothing to suppress there.
The majority goes on to conflate Appellee’s non-answer to a question with the later request that he physically unlock his iPhone, and (perhaps) identifies that as the Fifth Amendment violation. But there was no testimonial statement or testimonial act to which the Fifth Amendment privilege or Edwards could attach. Accordingly, there was no interrogation, no Edwards violation, and nothing to suppress as “derived” therefrom pursuant to M.R.E. 305(c)(2). Neither the right against self-incrimination nor Edwards is in play in the absence of testimony that is “a witness against [oneself].”
II.
Contrary to its understanding of the law[3] the majority does in fact need to show that the entry of the password itself was both testimonial and incriminating to trigger the protections of the Fifth Amendment. See United States v. Castillo, 74 M.J. 160, 165 (C.A.A.F. 2015) (‘“To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled.’ ” (quoting Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 189, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004))); Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (“[T]he privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.” (emphasis added)); see also Doe v. United States, 487 U.S. 201, 210-11, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988) (concluding that “certain acts, though incriminating, are not within the privilege,” because “the suspect was not required to disclose any knowledge he might have, or to speak his guilt” (emphasis added) (citations omitted) (internal quotation marks omitted)). The Fifth Amendment’s protections against self-incrimination, and hence Edwards, apply only to testimonial communications that are the result of interrogation. See Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); Everett v. Sec., Fla. Dept. of Corrections, 779 F.3d 1212, 1244 (11th Cir. 2016) (concluding, with respect to a DNA request in a post-invocation custodial context, that “[t]he privilege against self-incrimination extends only to compelled testimonial communications” (emphasis added)); see also Roa, 24 M.J. at 301 (Everett, C.J., concurring in the result) (recognizing that “Edwards provides protection only as to interrogation”).
Granted, “the distinction between real or physical evidence, on the one hand, and communications or testimony, on the other, is not readily drawn in many eases.” South Dakota v. Neville, 459 U.S. 553, 561, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (citing Schmerber, 384 U.S. at 764, 86 S.Ct. 1826). For instance, the Fifth Amendment’s protections apply in some instances to an accused who is compelled to produce papers and documents, but never applies to an accused who is compelled to produce a writing sample, undergo fingerprinting, or the withdrawal of blood samples. See Schmerber, 384 U.S. at 763-65, 86 S.Ct. 1826; see also Fisher, 425 U.S. at 408, 96 S.Ct. 1569. In this context, the question whether the act of entering a passcode into a phone can be testimonial is fairly novel. Some courts have concluded that the fact that a passcode emanates from “mental processes” is enough to deem it testimonial, at least when it is spoken, or the passcode *423 subpoenaed. See United States v. Kirschner, 823 F.Supp.2d 665, 669 (E.D. Mich. 2010); see also Sec. and Exch. Comm’n v. Huang, No. 15-269, 2015 U.S. Dist. LEXIS 127853 at *6, 2015 WL 5611644, at *2 (E.D. Pa. Sept. 23, 2015). Other courts have concluded that a telephone passcode is “neither testimonial nor communicative in the Fifth Amendment sense,” Venegas, 594 Fed.Appx. at 827, or that post-invocation password requests do not violate the Fifth Amendment, United States v. Gavegnano, 305 Fed.Appx. 954, 956 (4th Cir. 2009), or that there is no meaningful distinction between a numeric passcode and a fingerprint passcode in the context of mobile phones—and that neither is testimonial in any event, see State v. Stahl, 206 So.3d 124, 135-36 (Fl. Dist. Ct. App. 2016).
Rather than grapple with a critical point of law, the majority chooses to baldly assert— without citation to any authority—that “those who seek Edwards protection do not need to establish that the interrogation produced or sought a testimonial statement in order to establish a violation.” Mitchell, 76 M.J. 413, 419 (emphasis added). It is simply bizarre to conclude that the Fifth Amendment right against self-incrimination could possibly be implicated where no testimony was forthcoming, i.e., produced. Equally foreign to reason is the ipse dixit notion that Edwards, which assumes self-incrimination was compelled— i.e., involuntary, under certain circumstances—has some independent substantive identity absent an incriminating testimonial statement.
The majority’s wrongheaded application of Edwards appears to transform a prudential prophylactic into a freestanding constitutional right untethered from “bearing witness” against oneself at all. The majority’s view that Edwards provides a right against “badgering,” [4] whether it results in an incriminating statement or not, see id., is a policy judgment divorced from the relevant clause of the Fifth Amendment. That clause plainly states that its purpose is to protect a suspect from being “compelled in any criminal case to be a witness against himself.” U.S. Const. amend. V; see also Schmerber, 384 U.S. at 765, 86 S.Ct. 1826; Doe, 487 U.S. at 210-11, 108 S.Ct. 2341 (recognizing that “certain acts, though incriminating, are not within the privilege” and noting that an accused incriminates himself when he “speak[s] his guilt” (emphasis added)); cf. Solem v. Stumes, 465 U.S. 638, 646, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) (“Edwards established a bright-line rule to safeguard pre-existing rights_” (emphasis added)).
III.
But while the majority must explain how the act of entering an iPhone passcode is in fact testimonial, in response to interrogation, and incriminating, it is sufficient for my purposes to illustrate that the request that Appellee enter his passcode was not “reasonably likely to elicit an incriminating response,” Innis, 446 U.S. at 301, 100 S.Ct. 1682 (emphasis added), and therefore not an “interrogation” for the purposes of Edwards and the Fifth Amendment. This is not a novel inquiry.
A.
It is well established that an accused is subject to interrogation when law enforcement officers ask questions “reasonably likely to elicit an incriminating response from the suspect.” Id. (emphasis added). An accused incriminates himself—that is, gives an incriminating response—when he makes statements that “support a conviction under a federal criminal statute” or “furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.” United States v. Hubbell, 530 U.S. 27, 38, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000) (quoting Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (quotation *424 marks omitted)). Not all statements are incriminating, and courts have recognized that just as “not all statements made while in custody are the product of interrogation,” Holman v. Kemna, 212 F.3d 413, 418 (8th Cir. 2000), “not all questioning of in-custody suspects constitutes interrogation.” United States v. Ventura, 85 F.3d 708, 712 n.5 (1st Cir. 1996).
“ ‘A request for consent to search does not infringe upon Article 31 or Fifth Amendment safeguards against self-incrimination because such requests-are not interrogations and the consent given is ordinarily not a statement.’ ” United States v. Hutchins, 72 M.J. 294, 297 (C.A.A.F. 2013) (quoting United States v. Frazier, 34 M.J. 135, 137 (C.M.A. 1992)). This is true even where the person has invoked and Edwards applies. Cf. United States v. Gonzalez, Nos. 95-5004, 96-5026, 1996 U.S. App. LEXIS 34730, at *9-10, 1995 WL 729483, at *3 (4th Cir. 1995) (per curiam) (unpublished) (acknowledging Edwards but noting that a post-invocation “request to search [defendant’s] hotel room does not in and of itself elicit testimonial evidence of guilt”). In this case, the Government had authority to search and seize Appellee’s iPhone pursuant to a valid search authorization. While the request that Appellee unlock his iPhone was not a request for consent to search, in this case it resembles “the common-law principle of announcement,” which has been recognized as an element of the reasonableness inquiry under the Fourth Amendment. Wilson v. Arkansas, 514 U.S. 927, 934-36, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995). Requesting that Appellee unlock his phone before the Government seeks to unlock it by force is the functional equivalent of “knock and announce,” a request that the owner open the door, as opposed to an agent kicking it in. See generally United States v. Ramirez, 523 U.S. 65, 73, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (discussing the relationship between property damage during no-knock entries and reasonableness under the Fourth Amendment). A request for access into a phone seized pursuant to a search authorization is plainly not an interrogation, just as a request to open the door to a home prior to executing a search warrant is not an interrogation.
B.
Even without this well-settled law, the request to unlock the iPhone is also not an interrogation because the answer one could reasonably expect—entering the passcode— was not incriminating. It would not itself have served as a directly inculpatory statement expressing Appellee’s guilt or supported a' conviction under a criminal statute. The passcode would not have been admitted at trial and did not itself “communicate any information about the investigated crime.” Roa, 24 M.J. at 301 (Everett, C.J., concurring in the result).
Likewise, the act of entering the code conveyed no incriminating facts in the way that providing documents sometimes does. Unlike statements that “authenticate] or identify] ... documents,” see id, neither Appellee’s passcode nor the fact that he entered it was likely to—or actually did—reveal any incriminating information. At most, the entry of a passcode would reveal, (1) an undisclosed specific number combination with no contextual meaning or weight and (2) an implicit admission that Appellee owned the phone and knew the passcode for it. Cf. United States v. Apple Mac Pro Computer, 851 F.3d 238, 248 (3d Cir. 2017); Gavegnano, 306 Fed. Appx. at 966.
Here such revelations would have been a foregone conclusion that “add[ed] little or nothing to the sum total of the Government’s information,” Hubbell, 530 U.S. at 44, 120 S.Ct. 2037 (quoting Fisher, 426 U.S. at 411, 96 S.Ct. 1569). Based on the facts of record, it was apparent to all parties that Appellee owned the iPhone: ownership was not in dispute. And it is common sense that a person who owns a phone also knows the passcode and has the capability to use it. “[I]n common experience, the first would be a near truism, and the latter self-evident.” Fisher, 425 U.S. at 411, 96 S.Ct. 1569. The fact that Appellee could unlock his own phone was simply neither testimonial nor incriminating. See Brief of Notre Dame Law Students as Amicus Curiae in Support of Appellant, at 14-15, *425 United States v. Mitchell, No. 17-0153 (C.A.A.P. Mar. 21, 2017); Roa, 24 M.J. at 301 (Everett, C.J., concurring in the result) (“A distinction must be made ... between granting consent to search property which has already been identified by law-enforcement agents and identifying property for those agents.”).[5]
Like the Fourth and Fifth Circuits, cf. Gavegnano, 305 Fed.Appx. at 966; Venegas, 594 Fed.Appx. at 827; the Air Force Court of Criminal Appeals has similarly concluded that a request for a passcode to a phone— whether spoken or physically entered—'does not violate the Fifth Amendment. See, e.g., United States v. Robinson, 76 M.J. 663, 670-71 (A.F. Ct. Crim. App. 2017) (holding that a post-invocation passcode request made in conjunction with a request for consent to search was not an interrogation because the passcode was not itself incriminating); United States v. Blatney, Misc. Dkt. No. 2016-16, 2017 CCA LEXIS 354, at *10, 2017 WL 2422807, at *4 (A.F. Ct. Crim. App. May 22, 2017) (concluding that because the identity, location, ownership, dominion, and control of a cell phone were not in dispute, the military judge abused her discretion in holding that the request for the phone’s passcode constituted an interrogation); see also United States v. Fricosu, 841 F.Supp.2d 1232, 1237 (D. Colo. 2012) (holding the Fifth Amendment did not prohibit a government-compelled production of unencrypted contents of a computer when their existence and location were known); cf. In re Grand Jury Subpoena (Boucher), No. 2:06-10-91, 2009 U.S. Dist. LEXIS 13006, at *6-10, 2009 WL 424718, at *3-4 (D. Vt. Feb. 19, 2009) (concluding that compelling the production of an unencrypted version of a laptop’s hard drive would not “communicate incriminating facts”). But see Kirschner, 823 F.Supp.2d at 669 (quashing subpoena for the password to a computer as a testimonial communication).
IV.
The majority concludes, to the contrary, that an interrogation, and therefore an Edwards violation, occurred because Appellee “demonstrated that entry of his passcode was an ‘incriminating response,’” i.e., a response that “furnish[ed] a link in the chain of evidence needed to prosecute” Appellee. Mitchell, 76 M.J. at 418, 419. The majority’s conclusion rests entirely on a naive misunderstanding of what the phrase “link in the chain,” Hoffman, 341 U.S. at 486, 71 S.Ct. 814, actually means. .The majority interprets the phrase to mean something that it clearly did not mean in Hoffman and has never been read to mean in any legal authority I have found. “Link in the chain” for purposes of the Fifth Amendment simply does not mean “but for.”
In Hoffman, the government sought a bench warrant for William Weisberg, a witness who failed to appear before a grand jury. Hoffman, 341 U.S. at 481, 487, 71 S.Ct. 814. The prosecutor asked Hoffman several questions about Weisberg’s whereabouts and Hoffman’s communications with Weisberg. Id. at 481, 71 S.Ct. 814. For example, the prosecutor asked Hoffman, “When did you last see [Weisberg]?” and “Have you seen [Weisberg] this week?” Id. Hoffinan invoked his Fifth Amendment privilege and refused to answer. Id. The Supreme Court held that Hoffman’s answers, though facially neutral, could incriminate Hoffman because they could “establish contacts between [Hoffman] and Weisberg during the crucial period when the latter was eluding the grand jury,” thereby “forg[ing] links in a chain of facts imperiling [him] with conviction” for hiding Weisberg. Id. at 488, 71 S.Ct. 814. Phrased differently, Hoffman’s testimony could have shown that he helped Weisberg hide on his property or shown that he was communicating with, and helping, Weisberg.
*426 The majority uses this language to conclude that Appellee’s act of entering his iPhone passcode is a “link in a chain” because it allowed entry to the iPhone, which in turn contained evidence. But Hoffman did not purport to expand the scope of the Fifth Amendment to include all non-incriminating statements or acts that might lead investigators to, or provide access to, evidence; it merely recognized that some statements, which are not incriminating on their face, might themsel/ves become incriminating when placed in context with other evidence. As the Court in Hoffman explained:
The privilege afforded not only extends to answers that would in themselves support a conviction ... but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.... [I]f the witness, upon interposing his claim, were required to prove the hazard in the sensé in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.
Id. at 486-87 (emphasis added). Hoffman merely extended the protections of the Fifth Amendment to those statements that were not facially inculpatory, but could be read, in context, to incriminate the accused. Likewise, in the case that Hoffman cited for the “link in the chain” language, Blau v. United States, the Court observed:
[Petitioner] was asked several questions concerning the Communist Party of Colorado and her employment by it....
[S]he reasonably could fear that criminal charges might be brought against her if she admitted employment by the Communist Party or intimate knowledge of its workings. Whether such admissions by themselves would support a conviction under a criminal statute is immaterial. Answers to the questions asked by the grand jury would have furnished a link in the chain of evidence needed in a prosecution of petitioner for violation of (or conspiracy to violate) the Smith Act.
340 U.S. 159-61, 71 S.Ct. 223, 95 L.Ed. 170 (1950) (emphasis added) (footnote omitted). In both Blau and Hoffman, the Court contrasted facially incriminating answers with answers that were not facially inculpatory, but could have been used as “evidence ... to prosecute.” Hoffman, 341 U.S. at 486, 71 S.Ct. 814. As noted previously, the passcode itself is clearly not “evidence” in this case, and neither is Appellee’s act of unlocking his iPhone. Rather, it is the contents stored on the iPhone itself that revealed facts related to the criminal investigation and the Government had a lawful authorization to search and seize those contents.[6]
Appellee’s act of entering his password into his iPhone gave law enforcement immediate access to its contents; but the Supreme Court has clearly held that provision of access to evidence is not necessarily “incriminating” under the Fifth Amendment. In Doe, for example, the accused invoked his Fifth Amendment privilege “[w]hen questioned about the existence or location of additional records” of his overseas bank records. 487 U.S. at 202-03, 108 S.Ct. 2341. The government sought a court order requiring the accused to sign twelve forms consenting to the disclosure of records relating to overseas bank accounts that the government “knew or suspected that Doe had control” over. Id. at 203,108 S.Ct. 2341. The Doe Court concluded that these forms did not implicate the Fifth *427 Amendment privilege, because, although the answers gave the government “access to a potential source of evidence,” they did not themselves “point the Government toward hidden accounts” or “provide information that w[ould] assist the prosecution in uncovering evidence.” Id. at 215, 108 S.Ct. 2341 (emphasis added). Similarly here, Appellee’s entry of his passcode merely provided access to a device already known to—indeed in the possession of—law enforcement.
V.
In this case the majority has inexplicably, and without a textually principled explanation, wandered far from the core principles the Fifth Amendment and Edwards were intended to protect. This gratuitous expansion of the scope of the Fifth Amendment privilege will necessarily tear at the logical contours of the Fourth Amendment.[7] How can we reasonably explain that the government may lawfully obtain authorization to seize and search a phone, lawfully “break into” that phone independent of Appellee’s cooperation after it is seized, but cannot first request that Appellee furnish access?
It is difficult to say how the majority’s expansive ruling will work in practice. If we were dealing with a house rather than an iPhone, and had Appellee unlocked the door to his home following a request from law enforcement'executing a warrant, would the majority similarly conclude that the request to open the door was an interrogation and the affirmative action an incriminating statement because it provided the government with quicker access to that home than if they had attempted to break down the door?
At bottom, this was a reasonable search and seizure conducted pursuant to a valid search authorization. The Government did not violate Appellee’s legal rights either when it asked Appellee for his iPhone pas-scode (which he declined to provide) or when it asked him to enter his iPhone passcode. Even assuming the majority can explain how this latter act of inputting a passcode was itself testimonial, the request was not “reasonably likely to elicit an incriminating response from the suspect,” Innis, 446 U.S. at 301, 100 S.Ct. 1682, nor did it in fact do so. Therefore, Appellee was not subjected to interrogation in violation of Edwards or M.R.E. 305(c)(2).[8]1 respectfully dissent.

. The fact that investigators initially asked Appel-lee to speak his passcode is irrelevant for purposes of the Fifth Amendment or Edwards inquiry as he declined to tell them his passcode—there was no statement. See United States v. Patane, 542 U.S. 630, 634, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion); McNeil v. Wisconsin, 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

. The law enforcement officer involved in the exchange with Appellee indicated at trial that to the best of his knowledge, he had no reason to believe that the digital forensic examiner could not unlock Appellee’s iPhone.

. Mitchell, 76 M.J. at 418-19, 419.

. The majority defends their conclusion that an Edwards violation exists in the absence of a testimonial statement by stating that the "core [of] the Fifth Amendment” protects against "badgering an unrepresented suspect into granting access to incriminating information." 76 M.J. at 419. The brevity of the encounter between Appel-lee and Investigator Tsai, and the former's voluntary act of unlocking his iPhone, cannot seriously be said to, support the majority’s weighty charge of “badgering.”

. If ownership of the iPhone was in question before the agents asked Appellee to enter his passcode, perhaps this would be a different case. See Orin Kerr, The Fifth Amendment and Touch ID, Wash. Post: The Volokoh Conspiracy, Oct. 21, 2016, https://www.washingtonpost.corn/news/ volokhconspiracy/wp/2016/10/21/the-fifth-amendment-and-touch-id/?utm_term=.f8926fleb 712 (last visited Aug. 25, 2017) (distinguishing that situation from provision of a passcode to a phone whose ownership is known, a foregone conclusion "that should defeat the [Fifth Amendment] privilege”).

. In executing the search authorization, law enforcement did not ask Appellee anything about the contents of his iPhone, let alone the files, photos, or applications he stored on his iPhone. Nor did they ask Appellee to pinpoint where particular files or photos were located. See United States v. Green, 272 F.3d 748, 752 (5th Cir. 2001) (law enforcement violated suspect's rights under Edwards and Miranda when they asked suspect to disclose the location of his firearms and open cases that he had identified as containing firearms because this amounted to custodial interrogation).

. The majority's purported discovery of an Edwards violation absent either a "statement” or an "interrogation" undeniably leads us down a lawless and reckless path, the effects of which will be felt immediately in this Court’s review of United States v. Blatney, No. 17-0485 (C.A.A.F. Aug. 10, 2017) (order granting review), and United States v. Robinson, No. 17-0504 (C.A.A.F. Aug. 18, 2017) (order granting review).

. I also note that the majority oddly suggests that the facts of this case somehow “extendf] beyond a mere consent to search” and that therefore our decision in United States v. Hutchins is inapplicable. Mitchell, 76 M.J. at 418-19. On the contrary, thp facts of Hutchins are instructive. There, the accused was kept in solitary confinement for a week, deprived of a lawyer despite a request for one, and the investigator admitted that he reiniti-ated contact to further the investigation. See Hutchins, 72 M.J. at 296-98. This contact, unlike the instant case, resulted in an incriminating statement. Clearly, under some circumstances, a request for consent to search may conceal an unlawful attempt to coax incriminating information out of an accused, as in Hutchins. Those circumstances are not present here.